J-A05029-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| C.A.D., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| A.M.B., | |
| Appellant | No. 1497 WDA 2016 |

Appeal from the Order Entered September 6, 2016
In the Court of Common Pleas of Clearfield County
Civil Division at No(s): 2009-1952 CD

BEFORE:  BENDER, P.J.E., SHOGAN, J. and MOULTON, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED APRIL 3, 2017**

A.M.B. ("Mother") appeals from the order entered on September 6, 2016 that awarded C.A.D. ("Father") primary physical custody of S.D. ("Child"), born in February of 2008, and partial physical custody to Mother. The parties were awarded joint legal custody.  After review, we affirm.

In this ongoing custody dispute, the trial court provided the following procedural history of this case:

> The parties were never married but had an intermittent relationship for approximately 6 years that ended in May of 2012.  Mother and Father shared custody of the Child under several Custody Orders entered by this [c]ourt.  On March 31, 2015, Mother filed a Notice of Proposed Relocation with the [c]ourt seeking to relocate from DuBois, Pennsylvania to St. Marys, Pennsylvania.  The parties appeared before this [c]ourt on August 18, 2015 for a hearing to consider Mother's Petition for Relocation and Father's Petition for Custody Modification and Counter Affidavit Regarding Relocation.  On August 26, 2015, this [c]ourt entered an Order granting Father primary physical custody in finding that Mother's move to St. Marys, Pennsylvania

> constituted a relocation. Mother filed a timely appeal to the Superior Court of Pennsylvania. On March 11, 2016, the Superior Court of Pennsylvania entered an Order which vacated the August 26, 2015 Order and remanded the case for further proceedings.[1] … As a result of the August 26, 2015 Order being vacated, the parties have been following the [c]ourt's Orders of March 7, 2013, March 12, 2014, and May 27, 2015. Mother filed a Petition to Open the Record. The [c]ourt held a hearing on this matter and the matter is now ripe for decision. The [c]ourt notes that during the hearing in this matter, Mother withdrew her Request for Relocation and the [c]ourt will now enter an Opinion and Order relative to Father's Petition for Custody Modification. The [c]ourt has carefully reviewed the record, as well as the evidence presented at the hearing, and the statutory factors as set forth in 23 Pa.C.S. § 5328 and the [c]ourt is prepared to rule on this matter.

Trial Court Opinion (TCO), 9/6/16, at 1-2 (unnumbered). It appears that as a result of this Court's decision in Mother's first appeal, the trial court's order granting Father primary custody of Child reverted back to a week-on/week-off schedule, which the parties followed until the September 6, 2016 order was entered and which is now the subject of this appeal.

After the trial court issued the September 6, 2016 order that again awarded primary physical custody of Child to Father and partial physical

---

[1] This Court determined that the trial court had not included in its decision an analysis of the statutory factors listed in 23 Pa.C.S. § 5328(a) (custody factors) and in 23 Pa.C.S. § 5337(h) (relocation factors). Therefore, the order appealed from was vacated and the case was remanded for further proceedings. *See C.A.D. v. A.M.B.*, No. 1430 WDA 2015, unpublished memorandum (Pa. Super. filed March 11, 2016) ("first appeal").

custody to Mother, Mother filed the instant appeal.[2]  She now raises the following issue for our review:

> Whether the trial court erred in concluding that the Child's best interest would be served by granting Father primary physical custody of the Child without properly applying the custody factors enumerated in 23 Pa.C.S.A. § 5328(a), as said factors weigh heavily in Mother's favor[?]

Mother's brief at 21.

When presented with child custody matters, we are guided by the following scope and standard of review:

> [O]ur scope is of the broadest type and our standard is abuse of discretion.  This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations.  In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand.  However, we are not bound by the trial court's deductions or inferences from its factual findings.  Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record.  We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*E.D. v. M.P.* 33 A.3d 73, 76 (Pa. Super. 2011) (quoting *A.D. v. M.A.B.*, 989 A.2d 32, 35-36 (Pa. Super. 2010)).  Furthermore, we note that:

---

[2] Essentially, the court ordered that during the school year, Mother would have partial custody three weekends out of four each month and a four hour period on Wednesdays after school.  During the summer months, the court ordered a shared custody arrangement on a week-on/week-off basis.  The court also set forth an extensive schedule for the parties to share the holidays throughout the year.

> The discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned.  Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

> *Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

*A.H. v. C.M.*, 58 A.3d 823, 825 (Pa. Super. 2012).

The primary concern in any custody case is the best interests of the child.  The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being.  *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citing *Arnold v. Arnold*, 847 A.2d 674, 677 (Pa. Super. 2004)).  Furthermore, we recognize that the Child Custody Act (Act), 23 Pa.C.S. §§ 5321-5340, governs all proceedings commenced after January 24, 2011.  The specific factors that a court must consider are listed at 23 Pa.C.S. § 5328(a)(1)–(16).  *See E.D.*, 33 A.3d at 79-80 (holding that "best interests of the child" analysis requires consideration of all section 5328(a) factors).[3]

_____

[3] Section 5328(a) of the Act provides:

*(Footnote Continued Next Page)*

*(Footnote Continued)* ———————————

**(a) Factors**.—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and the other party?

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

.  .  .

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

*(Footnote Continued Next Page)*

In her brief, Mother lists the section 5328(a) factors, setting forth her disagreement with the court's conclusions as to which factors favor which parent.[4]  Specifically, Mother contends that with regard to factor (1) the court erroneously determined that both parties are making efforts to encourage communication between Child and the other party.  Rather, Mother claims that Father is unable to encourage contact in that he "refuses to return telephone calls, text messages and emails" and "makes disparaging remarks towards [M]other."  Mother's brief at 35.

As for factor (2), the court found no evidence of physical or emotional abuse, which Mother accepts.  However, she contends that this factor should weigh in her favor "to maintain the status quo[,]" meaning a shared custody arrangement.  *Id.* at 36.  Regarding factor (3), the court found that "both parties adequately perform[ed] their parental duties[,]" but because Father had provided "a loving, stable, consistent and nurturing home in the past[,]"

*(Footnote Continued)* ———————————

> (14) The history of drug or alcohol abuse of a party or member of a party's household.
> (15) The mental and physical condition of a party or member of a party's household.
> (16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

[4] We recognize that in discussing the various factors, both the court and Mother do not in all cases align the factor number as listed in section 5328(a) with their discussion of the substance of the factor.  Therefore, this Court's discussion utilizes the factor number and its content as listed in footnote 3.

the court saw no reason to change the arrangement. TCO at 5 (unnumbered). Mother countered that she has performed all parental duties for Child since birth and that, therefore, factor (3) should have weighed in her favor.

Mother further contends that factor (4) should weigh in her favor because she intends for Child to continue attendance at the DuBois Area School District and to have Child participate in the extracurricular activities in that area. Mother noted that the court found Child's attendance at school in DuBois was "one of the positive aspects of Child's life…." *Id.* at 6. Thus, because Mother had no intent to change these aspects of Child's life, she asserts that this factor should count in her favor. With regard to factor (5), availability of extended family, and factor (6), sibling relationships, the court found that both parents have extended families in their respective living areas and that Child has strong relationships with his stepsiblings. Therefore, the court found these factors weighed equally as to the parties. Mother, however, without providing a reason, suggests that factor (5) should weigh in her favor, although she does acknowledge that factor (6) weighs equally.

The focus of factor (7) relates to Child's preference, which Mother contends weighs heavily in her favor. She relies on Child's testimony at the April 20, 2016 hearing at which Child testified *in camera* that he preferred the week-on/week-off schedule. **See** N.T., 4/20/16, at 58. In its opinion,

the trial court stated that "Child loves his parents very much[,]" and found that Child has "no issues with the present custodial arrangement and desires to see his Mother often and does not mind the trips to and from St. Marys, Pennsylvania." TCO at 7-8 (unnumbered). The court, however, did not state in whose favor this factor weighed.

As for factor (8), Mother recognizes that this factor was not relevant. With regard to factor (9), the court combined its findings with those in its discussion of factor (3), stating its satisfaction with Father's provision of "a loving, stable, consistent and nurturing home in the past[,]" thus, concluding no change was necessary. TCO at 5-6 (unnumbered). Accordingly, the court found this factor to weigh in Father's favor. To counter this finding, Mother explains that because Father had moved three times since October of 2015, and was again intending to move, there was no reason to change the week-on/week-off shared custody arrangement and that this factor should weigh in her favor.

The court further found that factor (10) weighed equally in each party's favor. *See* TCO at 6-7 (unnumbered) (included in the court's factor (5) discussion). Mother agrees, noting that Child is doing well in school. However, because of this finding by the court, she contends there is "no reason to unilaterally change custody granting it to Father." Mother's brief at 38.

Factor (11) concerns the proximity of the parties' residences. Mother acknowledges that the thirty-mile distance between the parties' homes and the custody exchanges have never been a problem. The court likewise recognized no problems and only reminded the parties to ensure that Child should continue to attend his activities in a timely manner. **See** TCO at 8 (unnumbered) (factor (10) discussion). The court weighed factor (12) equally, determining that "both parents are doing their best to take care of Child and make sure that they have appropriate supervision and care during their absences." **Id.** at 7 (unnumbered). Again, Mother acknowledges the court's weighing of this factor equally, but contends that this finding should have dictated that no change in the week-on/week-off schedule should have been ordered.

Mother's position regarding factor (13), which deals with the level of conflict between the parties, centers on her assertion that Father refuses to communicate or co-parent and responds to her by stating that any problems between them should be discussed in court. Therefore, Mother claims that this factor should weigh in her favor. The court recognized the level of conflict that exists between the parties, recommending that they "put their differences aside when it comes to the Child, and to communicate in an amicable fashion…." TCO at 8-9 (unnumbered). However, the court did not make a determination in whose favor this factor should weigh.

The court found that factor (14) (history of drug or alcohol abuse) and factor (15) (mental and physical condition of a party) were not relevant in this case. Mother agrees as to factor (14), but contends that due to Father's continued behavior toward her, a psychological evaluation should have been performed in response to her request before the court rendered its decision. Therefore, she claims that factor (15) should weigh in her favor.

The court does not discuss factor (16), but in its conclusion it emphasizes the need for the parties "to work on their communication and interaction with each other, and to co-parent with each other and to keep in mind that their ultimate goal is to hold the Child's welfare above their past history and current feelings toward each other." TCO at 9 (unnumbered).

In her brief, Mother utilizes factor (16) to highlight her position, claiming that the analysis of the sixteen factors should result in a continuation of the shared custody arrangement. She claims the court's awarding of primary physical custody to Father is not supported by the record because she has always been "ready, willing and able to continue to share [C]hild with [F]ather despite [F]ather's irrefutable, unscrupulous behavior, and she intended [to] continue with [C]hild's community activities and school district in DuBois." Mother's brief at 40. Mother again emphasizes that she has always encouraged contact between Father and Child, but that Father "attempts to turn [C]hild against [M]other by making derogatory comments about [M]other in [C]hild's presence; by blocking

telephone contact with [C]hild; by unilaterally signing [C]hild up for sporting activities; by being inflexible with periods of partial custody; and by refusing to co-parent with [M]other." *Id.*

Essentially, Mother's arguments center on her contention that most of the factors in section 5328(a) favor her, which is contrary to the trial court's conclusions. In addressing each factor, she cites evidence that is most favorable to her. However, based upon our review of the record, we conclude that the trial court considered all relevant factors and also note that its findings are supported by the record. Mother is basically requesting that we reject the trial court's findings and credibility determinations and accept the findings she proposes. We cannot do so. Rather,

> [w]e must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand.

*J.R.M. v. J.E.A.*, 33 A.3d 647, 650 (Pa. Super. 2011). Moreover, we recognize that this must have been a difficult decision for the trial court in that both parents love their Child and wish to provide Child with a good life even under the present circumstances. As this Court has stated, "the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record." *E.D.*, 33 A.3d at 76. Because we do not determine that the trial court's conclusions are unreasonable in light of the sustainable

findings, we are compelled to affirm the trial court's decision. Mother has not convinced us otherwise.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/3/2017